# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BERYL PATIN** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-5952** |
| **AEGIS CAPITAL CORP., ET AL.** | **SECTION: "S" (5)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Aegis Capital Corp.'s Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. #8) is **GRANTED** as to plaintiff's tort claims of fraud, conversion, negligence, gross negligence, negligent supervision, negligent breach of fiduciary duty and violation of State securities laws, and those claims are **DISMISSED**. The motion is **DENIED** as to plaintiff's breach of fiduciary duty claim based on fraud.

## BACKGROUND

This matter is before the court on a motion to dismiss filed by defendant, Aegis Capital Corp. Aegis argues that plaintiff's claims are untimely filed and that she failed properly to plead her fraud claims.

In 2005, plaintiff, Beryl Patin, hired her nephew, Terry Trenchard, to be her financial advisor. At the time, Trenchard, who lived in Virginia, was employed by Aegis. Patin invested $1,500,000 in her Aegis account that was managed by Trenchard. In May 2009, Trenchard's employment with Aegis ended and he became employed by Capitol Securities Management, Inc. Patin closed her Aegis account and moved her investments to Capitol so that she could retain Trenchard as her financial advisor.

Trenchard worked at Capitol from May 2009 until March 2017, when he was terminated because he was being investigated for fraud. When he was terminated in March 2017, Trenchard

sent confession letters to Patin, Capitol and Janet Lakin, another of his clients, detailing his scheme of fraudulent activity. Shortly thereafter, Trenchard committed suicide.

In his March 2017 confession letters, Trenchard outlined a scheme that lead to the loss of Patin's funds. Trenchard explained that he had a client ("client number one"), who had been with him since 1999 and had lost a substantial amount of money when technology stocks crashed in the early 2000s. Trenchard lied to client number 1 about her account balances, and stole money from other clients to fund client number one's withdrawals from her account. Trenchard took money from Patin's account for this purpose because he knew she was an unsophisticated investor and placed a lot of trust in him. Through at least 2010, Trenchard forged Patin's name on letters of authorization that he used to transfer money from Patin's account to client number one's account. Trenchard also transferred money from Patin's account to other clients' accounts and wrote checks to himself and his wife from Patin's account.

In 2009, when Patin moved her account to Capitol, the balance was $765,668.11. Trenchard claimed the declining balance was due to the market crash of 2008. However, by this time, Trenchard had written checks to himself and his wife from Patin's account in the total amount of $258,500, and caused $156,900 to be transferred from Patin's account to his other clients' accounts. Trenchard also wrote $90,000 in checks from Patin's account to Ridge Clearing, presumably to transfer those funds to the accounts of his other Aegis clients.

Trenchard also used Patin's account for high-volume trading on margin while her account was at Aegis and Capitol. When Patin's account was transferred from Aegis to Capitol, the account was valued at $765,668.11, and Trenchard had incurred margin debt amounting to $870,000.

2

On July 20, 2009, after Patin's account was transferred to Capitol, Trenchard began transferring funds from Patin's account to other Capitol customers' accounts. Trenchard continued to do this for several years.

In 2011, Trenchard discovered that Fidelity Brokerage Services, LLC would allow him to open a joint account with himself and Patin as co-owners without obtaining Patin's authorization or informed consent. Trenchard opened such an account and transferred money from Patin's Capitol account to the one at Fidelity so he could trade more aggressively in an attempt to make back the money he had stolen and lost from Patin's account. Trenchard's plan backfired and his aggressive trading resulted in more losses to Patin's account.

While employed at Capitol, Trenchard concealed his scheme by creating fake account statements and tax documents on cardstock paper bearing Capitol's logo. Trenchard mailed the fake documents in the same envelopes Capitol used for its official mailings. The fake documents stated that the customers had high asset levels in their accounts, when they actually did not. Trenchard continued to do this until January 2017.

On August 16, 2017, Patin filed arbitration claims with the Financial Industry Regulatory Authority ("FINRA") against Capitol and Fidelity. On August 31, 2017, Patin filed an Amended Statement of Claim to add Aegis to the proceeding. Aegis filed a motion to dismiss arguing that Paitn's claims were untimely under FINRA Rule 12206(a), which provides that "[n]o claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim." The arbitration panel granted Aegis' motion and

3

dismissed Patin's claims against Aegis "without prejudice to [her] right to re-file her claims against Aegis in court."[1]

Patin filed this suit against Aegis in the 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana on May 17, 2018, alleging claims of fraud, conversion, breach of fiduciary duty, negligence, gross negligence and negligent supervision. Patin also alleges claims for violations of Louisiana and Virginia securities laws. Patin alleges that Aegis is liable for all of Trenchard's conduct while he was employed by Aegis under the doctrine of *respondeat superior.* Aegis removed the action to the United States District Court for the Eastern District of Louisiana alleging diversity subject matter jurisdiction under 28 U.S.C. § 1332.

Thereafter, Aegis filed the instant motion to dismiss arguing that Patin's claims against it are time barred. Further, Aegis argues that Patin did not properly plead any fraud or conversion claims against it because the allegations specific to those claims are directed at Trenchard individually. Patin argues that her tort claims are not prescribed under the theories of *contra non valentum* and continuing tort. She also argues that she properly pleaded all claims, and that her breach of fiduciary duty claims are subject to a ten-year prescriptive period and are not time barred.

---

[1] FINRA Rule 12206 provides that dismissal of a claim under the rule does not prohibit a party from pursuing the claim in court, and that by filing a motion to dismiss, "the moving party agrees that if the panel dismisses a claim under this rule, the non-moving party may withdraw any remaining related claims without prejudice and may pursue all of the claims in court." Further, FINRA Rule 12206 provides that "when a claimant files a statement of claim in arbitration, any time limits for the filing of the claim in court will be tolled while FINRA retains jurisdiction of the claim."

**ANALYSIS**

**I.      Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, enough facts to state a claim for relief that is plausible on its face must be pleaded. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)).  A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S.Ct. at 1965.  The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008). In considering a motion to dismiss for failure to state a claim, a district court may consider only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)).

**II.     Prescription**

Aegis argues that Patin's tort and state law securities claims against it are prescribed. Generally, the party raising a prescription argument bears the burden of proving its application. Roane v. Jones, 116 So.3d 700, 707 (La. Ct. App. 2013) (citing McKinley v. Scott, 17 So.3d 81 (La. Ct. App. 2009)).  However, when a defendant shows that the claims raised in the complaint are "prescribed on [their] face, the plaintiff bears the burden of proving [that] the prescriptive period has

5

been suspended, interrupted or renounced." Wilhike v. Polk, 999 So.2d 83 (La. Ct. App. 2008) (citing Lima v. Schmidt, 595 S.2d 624 (La. 1992)). Once prescription has run, it cannot be suspended. Dominion Expl. & Prod., Inc. v. Waters, 972 So.2e 350, 362 (La. Ct. App. 2007) (citing Geiger v. State ex rel Dept. of Health & Hosp., 815 So.2d 80 (La. 2002)). "The prescriptive period applicable to an action is determined by the character of the action disclosed in the pleadings." Fishbein v. State ex rel. La. State Univ. Health Sci. Ctr., 898 So.2d 1260, 1265 (La. 2005) (citing Starns v. Emmons, 538 So.2d 275, 277 (La. 1989)).

### 1. Delictual Actions - Fraud, Conversion and Negligence

Patin alleges that Trenchard committed fraud and conversion while employed at Aegis, and that Aegis is liable for Trenchard's actions under the theory of *resondeat superior*. Patin also alleges that Aegis was negligent and grossly negligent in its supervision of Trenchard.

Delictual actions, such as fraud, conversion, and negligence, prescribe one year from the day the injury or damage is sustained. La. Civ. Code art. 3492; Roane v. Jones, 116 So.3d 700, 707 (La. Ct. App. 2013); Reed v. Abney, 928 So.2d 585, 588 (La. Ct. App. 2006). Damage or injury is sustained for the purposes of prescription when it has "manifested itself with sufficient certainty to support accrual of a cause of action." Cole v. Celotex Corp., 620 So.2d 1154, 1156 (La. 1993).

Patin alleges various instances in which she claims Trenchard damaged her by committing fraud and conversion while Trenchard was employed at Aegis, and that Aegis was negligent in its supervision of Trenchard. Trenchard's employment with Aegis ended in May 2009. Patin sustained injury or damage from Trenchard's actions when he stole the money from her account at Aegis. Patin did not file her arbitration claim with FINRA until August 2017, and filed this court action in May 2018. Thus, Patin's tort claims are prescribed on the face of the complaint. Patin argues that the

application of the doctrines of *contra non valentem* and continuing tort prevent her tort claims from being prescribed.

### a. *Contra Non Valentem*

*Contra non valentem* is a jurisprudential doctrine whereby prescription is suspended when a person cannot file suit. Carter v. Haygood, 892 So.2d 1261, 1268 (La. 2005) (citing Frank L. Maraist and Thomas C. Galligan, Louisiana Tort Law § 10-4(b), 22 (1996)). The Supreme Court of Louisiana has recognized four circumstances where the doctrine of *contra non valentem* is applied to suspend the running of prescription:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
>
> (4) where the cause of action is neither known or reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.

Marin v. Exxon Mobil Corp., 48 So.3d 234, 245 (La. 2010). *Contra non valentem* is only to be applied in exceptional circumstances and "will not exempt the plaintiff's claim from the running of prescription if [her] ignorance is attributable to [her] own willfulness or neglect; that is, a plaintiff will be deemed to know what [s]he could by reasonable diligence have learned." Id. at 245-46. "Further, 'prescription runs from the date on which [a plaintiff] first suffered actual and appreciable damage, . . . even though [s]he may thereafter come to a more precise realization of the damages he has already incurred or incur further damages as a result of the completed tortious act.'" Id. at 246.

Patin argues that this doctrine applies because Trenchard continued to lull her into believing her accounts were performing well and engaged in activities to fraudulently conceal his misdeeds. Specifically, Patin claims that Trenchard sent her and other victims fake tax forms and account statements that appeared to be legitimate documents from Capitol. Patin also points to Trenchard's scheme of opening accounts at Fidelity in her name to facilitate his fraud while he was employed at Capitol. Patin argues that she was not unreasonable for failing to discover Trenchard's deception sooner than March 2017, because other people were affected by Trenchard's scheme and she trusted him to honestly manage her accounts as her nephew.

Patin has not established that *contra non valentem* applies. When Patin moved her investment account from Aegis to Capitol, her account balance was approximately half of its original amount. At that time, Patin was on notice that something was amiss and should have investigated further. If she had conducted a reasonable investigation into her account, she could have discovered that Trenchard had improperly withdrawn funds from and mismanaged her account. Patin does not allege that Trenchard engaged in any deception to cover his tracts before 2009. Indeed, the complaint alleges that Trenchard sent false account statements and tax documents that purported to be from Capitol, not Aegis. Therefore, Patin has not demonstrated that prescription was interrupted on her fraud, conversion and negligence claims against Aegis by the doctrine of *contra non valentem*.

### b. Continuing Tort

Patin also argues that the doctrine of continuing tort applies to prevent the running of prescription because Trenchard engaged in a pattern of fraud and conversion that lasted until March 2017.

Under Louisiana law, the continuing tort doctrine is an exception to the general rule of prescription. Washington v. State, Dept. of Pub. Safety, 2014 WL 2558205 (La. Ct. App. 6/4/2014). "When tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages has ended." Id. (citing Bustamento v. Tucker, 607 So.2d 532 (La. 1992)). "To determine whether a continuing tort exists, the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen." Global Mktg. Solutions, LLC v. Blue Mill Farms, Inc., - - - S.3d - - -, 2014 WL 4656572, at *6 (La. Ct. App. 9/19/2014) (citing Marin v. Exxon Mobil Corp., 48 So.3d 234, 253 (La. 2010)).

Patin alleges that Trenchard engaged in specific instances of fraud and conversion that spanned many years while Trenchard was employed at Aegis from 2005 to May 2009, and Capitol from May 2009 to March 2017. Any alleged continuing acts of fraud or conversion committed by Trenchard and any negligent supervision on the part of Aegis ended in May 2009, when Trenchard left Aegis. Any responsibility on the part of Aegis for Trenchard's actions terminated at that time. Thus, at the latest, prescription began to run as to Patin's tort claims against Aegis in May 2009, which was more than a year before Patin filed her FINRA arbitration demand or this court suit.

Because Patin's tort claims of fraud, conversion, and negligence against Aegis have prescribed on the face of the complaint, and Patin has not established that prescription was

suspended or interrupted, Aegis' motion to dismiss plaintiff's fraud, conversion and negligence claims is GRANTED, and those claims are DISMISSED.

   2. **State Securities Laws**

Patin brings claims under the Louisiana and Virginia state securities laws. Louisiana Revised Statutes § 51:714(C) provides a two-year prescription period for suits related to the sales of securities, which begins to run from the date of the contract for sale or sale, if there is no contract for sale. Similarly, Virginia Code § 13.1-522(D) provides that suits related to the sale of securities must be filed within two years of the transaction upon which the suit is based. Patin closed her account with Aegis in 2009, more than 9 years ago. Thus, any transactions pertaining to Patin's Aegis account occurred more than 2 years ago, and a claim under either the Louisiana or Virginia securities laws against Aegis is time barred. As such, Aegis' motion to dismiss Patin's state securities laws claims is GRANTED, and those claims are DISMISSED.

   3. **Breach of Fiduciary Duty**

Aegis argues that Patin's breach of fiduciary duty claim is based on negligence and is prescribed. Alternatively, Aegis argues that, if the court finds that Patin's breach of fiduciary duty claim is based on fraud, it is subject to dismissal as being improperly pleaded under Rule 9(b) of the Federal Rules of Civil Procedure.

Under Louisiana law a breach of a fiduciary duty is generally a personal action subject to the ten-year prescriptive period set forth in Louisiana Civil Code article 3499. dela Vergne v. dela Vergne, 745 So.2d 1271, 1275 (La. Ct. App. 2008). "However, courts must consider the underlying claim to determine if the action is indeed one for breach of fiduciary duty which is governed by the

10 year prescriptive period or merely a suit against a fiduciary for negligence which is governed by the one year prescriptive period." of La. Civ. Code art. 3492. Id.

Patin alleges that she had a relationship of trust and confidence with Aegis and Trenchard, and that, as a result, they both owed her a fiduciary duty. Specifically, Patin alleges that:

> 62.
>
> As their customer, Mr. Trenchard and **Aegis** owed fiduciary duties to Plaintiff. A fiduciary relationship of trust and confidence existed at all times, until Plaintiff first became aware of the misconduct through Mr. Trenchard's confession. Mr. Trenchard and **Capitol** were obligated to act for the benefit of Plaintiff, protect Plaintiff's interests, safeguard Plaintiff's assets, to refrain from self-dealing, and to act with honesty, integrity and complete candor when they provided investment advice, made investment decisions, and handled investment transactions on Plaintiff['s] behalf. **Aegis** was obligated to exercise oversight and to monitor the transactions in Plaintiff's accounts. The actions alleged herein constitute breaches of the fiduciary duties of loyalty and care that **Aegis** and Trenchard owed to the plaintiff.

(emphasis added). Patin also alleges that Aegis is liable for all of Trenchard's conduct while he was employed at Aegis through the doctrine of *respondeat superior,* which imposes liability on an employer when its employee commits a wrongful act in the course and scope of his employment. La Civ. Code art 2320; Brasseaux v. Town of Mamou, 752 So. 2d 815, 820-21 (La. 2000).

The allegations in Patin's complaint set forth claims against Aegis for breach of fiduciary duty that are based on negligence and on fraud. In paragraph 62 of the Complaint, Patin states a negligent breach of fiduciary duty claim against Aegis by alleging that "Aegis was obligated to exercise oversight and monitor the transactions in her account." This underlying claim is based on Aegis' alleged negligent supervision of Trenchard, and is governed by the one-year prescriptive

11

period. Patin's negligent breach of fiduciary duty claim against Aegis is untimely for the same reasons as Patin's other tort claims, and is DISMISSED.

However, Patin also states a breach of fiduciary duty claim against Aegis that is not based on negligence. In paragraph 63 of the complaint, Patin alleges that Aegis is liable for Trenchard's breach of fiduciary duty by virtue of the *respondeat superior* doctrine. Because this claim is not based on negligence, it is subject to the ten-year prescriptive period set forth in Louisiana Civil Code article 3499, and is not prescribed.

Moreover, Patin's breach of fiduciary duty claim is properly pleaded. Patin alleges that Aegis is vicariously liable for Trenchard's breach of fiduciary duty through his fraudulent actions. Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud be pleaded with particularity. "Rule 9(b) does not 'reflect a subscription to fact pleading' and requires only 'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after Twombly must make relief plausible, not merely conceivable, when taken as true." U.S. *ex rel* Grubbs v. Kanneganti, 565 F.3d 180, 186 (5th Cir. 2009). "The frequently stated, judicially-created standard for a sufficient fraud complaint . . . instructs a plaintiff to plead the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby." Id. (internal quotation and citation omitted). Patin's complaint meets these requirements by alleging that Trenchard committed fraud by mishandling the funds in her investment account while he was employed at Aegis. Patin alleged specific instances of Trenchard's wrongdoing such as writing checks to himself and his wife from Patin's account and transferring funds from Patin's account to his other clients' accounts. These allegations are sufficient to state a claim for breach of fiduciary duty against Trenchard and Aegis, through the doctrine of *respondeat*

*superior*.  Thus, Aegis' motion to dismiss Patin's breach of fiduciary duty claim based on fraud is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Aegis Capital Corp.'s Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. #8) is **GRANTED** as to plaintiff's tort claims of fraud, conversion, negligence, gross negligence, negligent supervision, negligent breach of fiduciary duty and violation of State securities laws, and those claims are **DISMISSED**.  The motion is **DENIED** as to plaintiff's breach of fiduciary duty claim based on fraud.

New Orleans, Louisiana, this   24th  day of August, 2018.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**